# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **MICHAEL DOBSON,** ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:19cv00755 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| **JEFFERY KISER, *et al.*,** ) | By:   Hon. Thomas T. Cullen |
| ) | **United States District Judge** |
| Defendants. ) | |

Plaintiff Michael Dobson, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against nine employees of the Virginia Department of Corrections ("VDOC") alleging violation of his constitutional rights arising from what he contends was deficient medical care.[1] This matter is before the court on Dobson's motion to appoint counsel,[2] Dobson's motions for injunctive relief,[3] and defendants Kiser, Herrick,[4] Anderson,

---

[1] The defendants in this action are Warden Jeffery Kiser, Nurse Bledsoe, Nurse Anderson, Nurse Witt, Nurse Ball, Nurse Hunter, Dr. Cortez, Dr. York, and the Prisoner Health Service Director Herrick.

[2] Dobson requests that the court appoint an attorney to represent him. The court cannot require an attorney to represent an indigent civil plaintiff. *See Mallard v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296, 309 (1989). However, the court may request that an attorney represent an indigent plaintiff in "exceptional cases." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Exceptional circumstances depend on the type and complexity of the case and the ability of the plaintiff to present it. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard*, 490 U.S. at 309. The court finds that the circumstances of this case are not exceptional, and the court will accordingly deny Dobson's motion to appoint counsel.

[3] One of Dobson's motions has been docketed as a temporary restraining order. (*See* ECF. No. 21). Upon review, the court determines that this filing is more properly construed as a motion for preliminary injunctive relief.

[4] Defendant Herrick is the unnamed Prisoner Health Service Director against whom Dobson bring suit.

Ball, Bledsoe, Hunter, Witt, and York's motions to dismiss.[5] After reviewing the record, the court concludes that Dobson fails to state a claim against these defendants and, therefore, will grant their motions to dismiss.

## I.

Dobson alleges that he experienced "chest pains" in 2017 while at Buckingham Correctional Center ("Buckingham"). On May 22, 2017, Dobson was seen at the Buckingham medical unit and told that his pain was "just heartburn." Dobson asserts he "did in fact have acid reflux and was treated for that," but his pain did not go away. Dobson asserts that after a year of being told "give the meds time to work," he wanted an MRI performed and to see a specialist. Dobson claims that he "repeatedly" asked "medical staff" at Buckingham for an MRI.

At some point, Dobson was transferred to Red Onion State Prison ("Red Onion") and on March 12, 2019, he was seen by "medical staff" at Red Onion. Dobson asserts he told defendant Nurse Ball that he needed a "test on [his] heart and nothing was done." Dobson was told that a "test would be ordered," but that by March 29, 2019, it had not been scheduled. On April 1, 2019, Dobson was notified in writing that he was scheduled for a "sick call" and there was a "statement" from defendant Nurse Anderson that "all [his] issues were already discussed with [a nurse practitioner.]" Fifteen days later Dobson had not been seen by medical staff. Dobson asserts that he filed grievances and was told his grievances were unfounded. Dobson proffers that he was having "bad chest pains and numbness on [his] left side" while

---

[5] The court notes that service has not yet been accomplished on Dr. Cortez and, thus, he has not filed a dispositive motion with the other defendants.

he was waiting to be seen. Dobson "was seen" on May 15, 2019, and on June 11, 2019, he was "placed on the chart for review[.]" Dobson asserts that defendant Dr. Fox told him he "was only having heartburn." Dobson "pushed to be seen by an outside doctor." He asserts that "medical staff told [him] that Richmond had ordered them not to send inmates out to the hospital unless there was overwhelming need for it [and that they should] just order pain meds [] in order to manage their pain, [but] not to try and fix the problem."

Dobson asserts that defendant Warden Kiser is "legally responsible" for the operation of Red Onion, and that he "sided with medical staff and did not order them to see to my care." Dobson proffers that defendant Nurse Bledsoe "signed off on the actions of the staff under her" and that she did not "[e]nsure that [Dobson] received the healthcare [he] needed." Dobson alleges that defendant Nurse Anderson "should have told someone over her that [he] needed to be seen" or to otherwise expedite his treatment. Dobson proffers that defendant Nurse Witt responded to his informal complaint and "stated that [he] hadn't complained of any chest or back pains." He argues that Nurse Witt "should have had [him] seen" by medical staff. Dobson told defendant Nurse Ball about his "chest and back'" pain and she did not order "any test of x[-]rays" during his intake exam at Red Onion. Dobson adds that defendant Dr. York did not "act in [accordance with his] well[-]being and should have ordered [a] test or put [him] in to see an outside doctor." Dobson claims that defendant Dr. Cortez treated him at Buckingham Correctional Center and that he "only ordered a chest x[-]ray" and failed to "properly diagnosis" Dobson's condition. Dobson alleges that Dr. Cortez "stated that Richmond would not approve any more test[s] if the x[-]ray didn't show anything," and that

Dr. York and Dr. Fox echoed similar sentiments. Dobson asserts that defendant Health Services Director Herrick upheld the Red Onion grievance responses.

Dobson alleges that he has been diagnosed with a heart blockage and may need a stint placed in his heart and that the condition "could kill [him]." Dobson claims "[t]he defendant(s) failed to give [him] immediate attention" and that his symptoms of "chest pains, nauseous stomach, numbness, headaches, shortness of breath" are "due to OCPO."

Dobson raises claims of deliberate indifference, "failure to properly diagnosis [his] condition," "emotional distress," "mental anguish," gross negligence, and "negligent supervision." As a remedy, Dobson seeks compensatory damages in the amount of $1,500,000 and, if a stint is required, $3,000,000 severally between the defendants. Dobson seeks punitive damages of $1,500,000. Dobson further seeks his costs of suit and any other relief the court deems proper.

Dobson filed suit in this court on November 7, 2019. He filed a motion for a preliminary injunction on January 12, 2020 (ECF No. 17), a motion for a temporary restraining order on February 4, 2020 (ECF No. 21), and a motion for a preliminary injunction on April 20, 2020 (ECF No. 38). He has also filed a motion to appoint counsel. (ECF No. 51.) The defendants filed a motion to dismiss on February 13, 2020 and have responded to his motions seeking injunctive relief. (ECF Nos. 22, 25, 26, 27, 42, 43, and 44.) The court has reviewed the pleadings, arguments of the parties, and applicable law, making this matter ripe for decision.

## II.

Dobson filed a motion for preliminary injunctive relief on January 24, 2020, requesting the court order an MRI preformed on his chest and lower back. (*See* ECF No. 17) ("Motion

One"). Dobson filed a motion for a temporary restraining order on February 4, 2020. (*See* ECF. No. 21) ("Motion Two"). Dobson filed a third motion for preliminary injunctive relief on April 20, 2020. (*See* ECF No. 38) ("Motion Three").

A preliminary injunction is an extraordinary and drastic remedy. *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). The general standard for imposing preliminary injunctive relief "requires parties seeking preliminary injunctions to demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest." *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013); *see also Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7 (2008). The court must be mindful that "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Barnett v. Young*, No. 5:18-cv-279, 2018 WL 3405415, at *2 (S.D. W. Va. June 21, 2018). A plaintiff must demonstrate "extraordinary circumstances," that would permit the court to "substitute [its] own judgment for that of the trained penological authorities charged with the administration of [state] facilities," *Taylor v. Freeman,* 34 F.3d 266, 268 (4th Cir.1994). The irreparable harm a plaintiff faces in the absence of relief cannot be "remote nor speculative" and instead must be "actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir.1991); *see also Cook v. Matthews*, No. 7:05-CV-00493, 2006 WL 1699956, at *2 (W.D. Va. June 15, 2006) (declining to grant preliminary injunctive relief where the treatment offered is not "so deficient as to put [the plaintiff] at imminent risk of serious harm").

In Motion One for a preliminary injunction, Dobson asserts defendant Dr. Fox wishes to place him on a heart monitor for seven days. Dobson claims he "told [Dr. Fox] that [he] only ha[s] chest pains when [he is] up and moving around" and the test, therefore, will "not work." Dobson states that he does not "believe [these symptoms are caused by] by [his] heart. [Instead, he] believe[s] it[']s [his] lungs." Dobson asserts that his "back is getting wors[e]" and that his "left foot is now numb constantly, and it's hard for [him] to urinate." Dobson claims he is experiencing a "tingling[,] pricking sensation radiating from [his] right shoulder blade down [his] right arm to [his] elbow."

In Motion Two for preliminary injunctive relief, Dobson asserts only that he has been waiting to be "seen" and that he has "been left to worry[.]" Dobson does not specify the relief he seeks in the motion.

In Motion Three for preliminary injunctive relief, Dobson alleges that he had a "tel[e]-med consultation" in February where he and the medical provider discussed "tests needed" and that "it was ordered that [his] blood pressure be monitored[.]" Dobson's blood pressure was monitored for two weeks and it "was high every time with the exception of one time." Dobson asserts that "no consultation" followed this and there was "no more monitoring." Dobson claims he "must be considered as high risk for stroke, heart attack, organ damage, morbidity or death, due to high blood pressure without medication." Dobson seeks a "medical injunction" so that he can receive "life[-]saving meds needed."

The irreparable harm that Dobson alleges is too "remote" and "speculative" for the court to grant injunctive relief. *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir.1991). Further, inasmuch as the court will grant the defendants' motions to dismiss,

Dobson has not clearly shown that he is likely to succeed on the merits of his claims. Finally, Dobson fails to allege that the balance of the equities tips in his favor or that the public interest would be served with a preliminary injunction. Accordingly, the court will deny Motion One, Motion Two, and Motion Three for preliminary injunctive relief.

### III.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a

plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe pro se pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a pro se complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

## IV.

Dobson fails to state a claim against defendants Warden Kiser and Director Herrick because he does not identify any personal involvement of either of these defendants which would give rise to a cognizable federal claim.

"To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual detail about

each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). A failure to allege personal involvement by the defendants is fatal to a claim. *Vinnedge* 550 F.2d at 928 (finding that as there was a failure "to allege any personal connection" and that the action, therefore, "must fail"). The complaint must raise more than a "sheer possibility" that the defendants "acted unlawfully[.]" *Iqbal*, 556 U.S. at 678; *see also Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998) ("[N]otice pleading requires generosity in interpreting a plaintiff's complaint. But generosity is not fantasy.").

Dobson has not identified any specific constitutional misconduct with respect to Warden Kiser or Director Herrick. The only allegation against Warden Kiser is that he did not override decisions of Red Onion medical staff. Director Herrick is alleged only to have upheld an institutional grievance on appeal. At bottom, Dobson's claims are based on speculation that Warden Kiser and Director Herrick have acted unlawfully. Accordingly, the court will grant their motion to dismiss.

## V.

Nurses Anderson, Ball, Bledsoe, Hunter, and Witt and Dr. York assert the court should dismiss Dobson's claim of deliberate indifference because he fails to state a claim. The court agrees and will grant these defendants' motion to dismiss.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). This is a two-prong test, with the first, "objective" prong requiring a demonstration of the seriousness of the deprivation, and the second, "subjective" prong requiring a showing of the defendant's "sufficiently culpable" state of mind. *Farmer*, 511 U.S. at 834. A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation omitted). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (U.S. 1994).

"[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference" sufficient to state a constitutional claim. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). "Deliberate indifference is a very high standard," and demonstrating mere negligence is insufficient. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). The "[i]nadvertent failure to

recognize a need for treatment does not present a constitutional deprivation." *Blount v. Neece*, No. 7:11CV00362, 2012 WL 3562764, at *4 (W.D. Va. Aug. 17, 2012), *aff'd*, 503 F. App'x 244 (4th Cir. 2013) (citing *Estelle*, 429 U.S. at 105–6) (finding that a nurse's failure to act upon symptoms did not rise to deliberate indifference).

The Fourth Circuit has explained that a plaintiff can make this showing through direct evidence of the official's actual knowledge, *Scinto v. Stansberry,* 841 F.3d 219, 226 (4th Cir. 2016), as well as through "circumstantial evidence tending to establish such knowledge, including evidence 'that a prison official knew of a substantial risk from the very fact that the risk was obvious,'" *id.* (quoting *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015)). A disagreement between a prisoner and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment except in extraordinary circumstances. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). A delay in providing treatment can give rise to a constitutional claim only when the "plaintiff shows that the defendant's conduct resulted in substantial harm to the patient." *Blount v. Stanley*, No. 7:12CV00400, No. 7:12CV00400, 2014 WL 325314, at *9 (W.D. Va. Jan. 29, 2014) (*Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008)). "Substantial harm" is defined as a "marked increase" in symptoms complained of or their severity. *Webb* , 281 F. App'x at 166 (citation omitted).

Nurses Anderson, Ball, Bledsoe, Hunter, and Witt and Dr. York argue that Dobson's claim of deliberate indifference fails because Dobson received treatment commensurate to his medical needs. Dobson has not alleged facts against these defendants from which the court

could infer that any delay in treatment resulted in substantial harm. Dobson alleges he raised his heart pain when he was examined on his intake at Red Onion on March 12, 2019. On April 1, 2019, Dobson was notified that he was scheduled for a "sick call[.]" Dobson was seen for this issue on May 15, 2019, and on June 11, 2019, was "placed on the chart for review[.]" Dobson's recitation of the facts do not support a finding of deliberate indifference and, indeed, indicate that his medical needs were being addressed.[6] Any delay in Dobson's treatment is not accompanied by a "marked increase" in symptoms complained of or their severity, which is required for a delay in treatment to give rise to a constitutional claim. *Webb*, 281 F. App'x at 166 (citation omitted). Accordingly, the court will grant the defendants' motion to dismiss.

## VI.

To the extent that Dobson's allegations can be construed as raising claims under Virginia law, these allegations also fail to state a claim.[7]

---

[6] Insofar as Dobson raises claims of a "tingling[,] pricking sensation radiating from [his] right shoulder blade down [his] right arm to [his] elbow" and concerns related to his high blood pressure, these claims are not contained in his complaint. Whether or not these new medical needs are being addressed is beyond the scope of the complaint and therefore are not entitled to the same presumptions as those within the complaint. *See Goodman v. Wexford Health Sources, Inc.,* 425 F. App'x 202, 204–05 (4th Cir.2011) (finding there is no supporting authority that factual assertions contained in the plaintiff objections are entitled to the same presumptions as the initial complaint); *see also Hewitt v. Amonitti*, No. 0:12-CV-665-MGL, 2013 WL 144178, at *3 (D.S.C. Jan. 14, 2013) (indicating that factual allegations not contained in the plaintiff's complaint are not obligated to be treated in the same light as factual allegations in the complaint).

[7] To the extent Dobson is attempting to state a negligence claim, defendants are immune by the virtue of the doctrine of sovereign immunity. *See Messina v. Burden*, 228 Va. 301, 313 (1984); *Coppage v. Mann*, 906 F. Supp. 1025, 1047–48 (E.D. Va. 1995); *Hixson v. Hutcheson*, No. 5:17-cv-00032, 2018 U.S. Dist. LEXIS 21962, at *11–14 (W.D. Va. Feb. 8, 2018). To the extent Dobson's allegations can be construed as a medical negligence claim, Dobson's complaint fails as a matter of law because he did not obtain the threshold requirement under Virginia law: a written opinion signed by an expert witness that states, based upon a reasonable understanding of the facts, that the defendants deviated from the applicable standard of care and that deviation was a proximate cause of the injuries claimed. *See* Va. Code § 8.01-20.1.

Virginia courts have routinely rejected arguments that an employer may be held liable for negligently supervising its employees. *See, e.g.*, *Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 235 Va. 55, 61 (Va. 1988) ("In Virginia there is no duty of reasonable care imposed upon an employer in the supervision of its employees . . . and we will not create one here."); *see e.g., Crump v. Morris*, 73 Va. Cir. 85, 89 (Rockingham Co. 2007); *Nickson v. Price*, 69 Va. Cir. 516 (Chesterfield Co. 2004); *Millman v. Snyder*, 65 Va. Cir. 62 (Fairfax Co. 2004); *Stottlemyer v. Ghramm*, 60 Va. Cir. 474, 484 (Winchester 2001). Any "negligent supervision" claims are, therefore, not cognizable as a matter of Virginia law.

To the extent Dobson's claims can be construed as claims of gross negligence, they fail as a matter of law. "Gross negligence is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) (internal quotation marks omitted) (quoting *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004)). "Gross negligence requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.* at 731 (quoting *Cowan*, 603 S.E.2d. at 918) (internal quotations omitted). The question of gross negligence is a matter of fact to be decided by a jury unless "reasonable minds could not differ upon the conclusion." *Id.* at 733 (quoting *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (Va. 1987)). A gross negligence claim fails as a matter of law if "the evidence shows that the defendants exercised some degree of care." *Id.* at 734 (citing *Colby v. Boyden*, 400 S.E.2d 184, 189 (Va. 1991)). The defendants rightfully point out that Dobson was regularly treated throughout this process. As treatment

for a medical condition is clearly indicative of some degree of care, Dobson's claim fails as a matter of law.

Insofar as the court can construe Dobson's claim of "emotional distress" as a claim of intentional infliction of emotional distress, his claim fails. To bring a claim of intentional infliction of emotional distress a plaintiff must show that "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe." *Russo v. White*, 241 Va. 23, 26 (1991). With regard to the conduct requirement, mere tortious or even criminal intent is insufficient. *Id.* at 27. Rather, the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 (1965)). Dobson has not alleged any facts which could fulfill the conduct requirement of intentional infliction of emotional distress.[8]

Dobson has not alleged any facts that, taken in his favor, could support a valid claim under Virginia law. Accordingly, the court will grant the defendants motions to dismiss as to any state law claims.

---

[8] To the extent that Dobson's claim could be interpreted as one for negligent infliction of emotional distress, it fails. "In this regard, the Supreme Court of Virginia has held that 'where conduct is merely negligent . . . and physical impact is lacking, there can be no recovery for emotional disturbance alone.' ). Thus, to sustain a claim of negligent infliction of emotional distress in the absence of 'physical impact,' the plaintiff must show that he or she suffered a 'physical injury' and that the 'physical injury was the natural result of fright or shock proximately caused by the defendant's negligence.'" Dao v. Faustin, 402 F. Supp. 3d 308, 321 (E.D. Va. 2019) (quoting *Hughes v. Moore*, 214 Va. 27, 34 (1973)). Dobson has not alleged any facts to support "physical impact" of the defendants' alleged negligence.

## VII.

Insofar as Dobson's allegations against defendants Warden Kiser and Director Herrick can be construed as a supervisory liability claim, they also fail.

The liability theory of *respondeat superior*, which imposes liability on the superior automatically by virtue of the employment structure, is not applicable in § 1983 cases. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978). Instead, a plaintiff must bring suit under supervisory liability standards which requires a plaintiff "demonstrate a plausible nexus or affirmative link between the supervisor's actions and the constitutional deprivation." *Jackson v. Brickey*, 771 F. Supp. 2d 593, 603 (W.D. Va. 2011). To succeed on a § 1983 claim of supervisory liability a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994)). "[E]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (quoting *Shaw*, 13 F.3d at 799). Supervisory liability claims are "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those

committed to their care." *Shaw*, 13 F.3d at 798 (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)); *see also Avery v. County of Burke*, 660 F.2d 111, 114 (4th Cir.1981) (supervisory liability under § 1983 can exist if "policies or customs actually caused [plaintiff's] injuries," which can be established by omissions as well as affirmative acts). Ordinarily, a plaintiff may not satisfy their "burden of proof by pointing to a single incident or isolated incidents." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (citing *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir.1980), *cert. denied*, 450 U.S. 929 (1981)).

Dobson has failed to allege facts which would plausibly support a claim of supervisory liability against either Warden Kiser or Director Herrick. Dobson has alleged no link between Warden Kiser and Director Herrick's actions or inactions and his alleged injury. Accordingly, the court will grant the defendants motion to dismiss as to any supervisory liability claim.

## VIII.

For the reasons discussed, the court will deny Dobson's motion to appoint counsel, deny Dobson's motions for injunctive relief, and grant defendants' Kiser, Herrick, Anderson, Ball, Bledsoe, Hunter, Witt, and York's motions to dismiss. The sole remaining defendant is Dr. Cortez.

The Clerk shall send a copy of this memorandum opinion and accompanying order to the parties.

**ENTERED** this 31st day of March, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE